UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                            )
CONSERVATION LAW FOUNDATION, INC.,          )
                                            )
        Plaintiff,                          )
                                            )
v.                                          )   Case No. 1:20-cv-10032-DPW
                                            )
ACADEMY EXPRESS, LLC,                       )
                                            )
        Defendant.                          )
_____)

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
ACADEMY EXPRESS, LLC'S MOTION FOR SUMMARY
JUDGMENT ON THE ISSUE OF STANDING**

Defendant Academy Express, LLC ("Academy" or "Defendant") submits this Memorandum of Law in support of its Motion for Summary Judgment on the Issue of Standing. As further argued below, the Court should dismiss plaintiff Conservation Law Foundation, Inc.'s ("CLF" or "Plaintiff") Amended Complaint in its entirety because, as a matter of law, it has no standing. CLF cannot meet either the constitutional requirements, nor the common law prerequisites to establish its organizational standing to pursue these claims. In addition, Plaintiff has failed to comply with the pre-suit notice requirement for this "citizen suit" under the Clean Air Act. But even if the complaint is not dismissed in its entirety for lack of standing, the Court should enter partial summary judgment and dismiss all claims seeking relief for alleged violations of the Act at the so-called Braintree lot, the Newton Go Bus stop and the Bridgeport lot, and for all but two days of alleged violations at the Agganis Way stop because there is no evidence that Plaintiff's members have suffered any concrete or particularized harm that is fairly traceable to the instances of alleged excessive idling at those locations.

## FACTS[1]

This is a "citizen suit" brought against Academy pursuant to Section 7406 of the Clean Air Act (the "Act"), for alleged instances of excessive idling in violation of the Act and of the Massachusetts and Connecticut State Implementation Plans ("SIP"). In its Amended Complaint, CLF seeks declaratory and injunctive relief and civil penalties "on behalf of its individual members, to redress and prevent Clean Air Act violations that negatively affect the health and lives of Massachusetts and Connecticut residents." (SOF at ¶6)

CLF has identified four (4) locations in Massachusetts and one (1) location in Connecticut at which violations allegedly occurred. These locations are: (1) the Newton Go Bus stop, 335 Grove Street, Auburndale, MA (the "Newton Go Bus stop"); (2) the bus lot at 531 Pond St., Braintree, MA (the "Braintree lot"); (3) the shuttle bus stop at 33 Harry Agganis Way, Boston, MA (the "Agganis Way stop"); (4) the Cambridge Go Bus stop, at 5D Cambridgepark Dr., Cambridge, MA (the "Cambridge Go Bus stop"); and (5) the bus lot at 114 River Street, Bridgeport, CT (the "Bridgeport lot") (collectively, the "Bus Stops"). (*Id*. at ¶10)

CLF alleges that buses owned or operated by Academy idled in excess of five (5) minutes at the Bus Stops in Massachusetts on the following dates:

| *Location* | *Dates of Alleged Excessive Idling* |
|---|---|
| Braintree lot | October 29, 2019<br>October 30, 2019<br>November 1, 2019<br>November 18, 2019<br>November 25, 2019<br>November 27, 2019<br>January 27, 2020 |

---

[1] Citations herein are to Academy's Statement of Undisputed Facts in Support of its Motion for Summary Judgment ("SOF"), and to the exhibits ("Exh."), attached thereto.

2

| Agganis Way stop | October 30, 2019<br>November 1, 2019<br>November 13, 2019<br>November 21, 2019<br>November 26, 2019<br>January 27, 2020<br>January 30, 2020 |
|---|---|
| Newton Go Bus stop | November 21, 2019<br>November 29, 2019<br>November 30, 2019<br>February 2, 2020 |
| Cambridge Go Bus stop | November 27, 2019<br>January 31, 2020 |

(SOF, ¶¶11, 12, 13, 14)

Prior to serving its original complaint, Plaintiff served written notice to Academy of alleged violations of the Act in Massachusetts (the "Massachusetts Notice letter"). (SOF, ¶2) As will be seen, the Massachusetts Notice letter, dated November 8, 2019, was sent prior to when any of the persons on whose behalf Plaintiff is purportedly bringing these claims joined the organization.

On October 29, 2020, CLF filed its Amended Complaint in which it alleged, for the first time, that buses owned or operated by Academy idled in excess of three (3) minutes, purportedly in violation of the Connecticut SIP, at the Bridgeport lot, in Bridgeport, Connecticut, on the following dates:

November 21, 2019; November 23, 2019; November 30, 2019; December 4, 2019; December 5, 2019; December 10, 2019; December 11, 2019; February 11, 2020; September 1, 2020; and September 3, 2020 (SOF, ¶15)

Prior to filing the Amended Complaint, CLF provided notice to Academy of alleged Clean Air Act violations in Connecticut by a letter dated July 6, 2020 (the "Connecticut Notice Letter"). But Plaintiff has identified no person in Connecticut who was a member of the organization at the time.

3

CLF has identified eight (8) members on whose behalf it brings these claims. They are: Mary Katherine Andrews; Kathleen Becker; Georgia Bolduc; Thomas Cahill; Robert Kendall; Sophia Ly; Sabrina Morelli; and Tommaso Wagner (collectively, the "Standing Witnesses"). (*Id*. at ¶17) CLF has provided declarations from these eight individuals and produced three of them – Robert Kendall, Sophia Ly and Tommaso Wagner – for deposition. (*Id*. at ¶16; Exh. 3, 5, 6, 7, 9, 10, 12, 14, 18, 22 and 23)

Each of the Standing Witnesses has provided testimony in regard to one, or at most two, of the Bus Stops. These locations, as well as the dates on which each Standing Witness first became a member of CLF, are set forth below:

| *Member* | *Date of Membership* | *Bus Stop(s) testified to* | *SOF ¶¶* |
|---|---|---|---|
| Mary Katherine Andrews | 01/08/2020 | Agganis Way stop | 29, 30 |
| Kathleen Becker | 12/17/2020 | Bridgeport lot | 20, 34, 35 |
| Georgia Bolduc | 02/21/2020 | Agganis Way stop | 38, 41 |
| Thomas Cahill | 03/12/2020 | Cambridge Go Bus stop | 42, 43 |
| Robert Kendall | 12/20/2019 | Cambridge Go Bus stop<br>Agganis Way stop | 46, 50 |
| Sophia Ly | 09/08/2020 | Newton Go Bus stop | 56, 57 |
| Sabrina Morelli | 05/18/2020 | Newton Go Bus stop<br>Bridgeport lot | 61, 62 |
| Tommaso Wagner | 09/09/2019 | Cambridge Go Bus stop<br>Newton Go Bus stop | 67, 71 |

However, not a single Standing Witnesses has personally observed, or has any first-hand knowledge, that Academy's buses have idled for more than five minutes at any of the Bus Stops *at any time*. The most that any of them can say is that they "understand" Academy's buses idle at the Bus Stops but they cannot say when this may have occurred or for how long the buses idled.

4

(SOF, ¶¶24, 25)  A comparison of the dates of the alleged violations at the Bus Stops with the dates on which the Standing Witnesses joined CLF reveals the following:

(i) There is no testimony, and thus *no evidence* that any of CLF's members have suffered any actual or concrete harm as a result of the incidents of alleged excessive idling of Academy's buses at the **Braintree lot**.

(ii) The alleged instances of excessive idling at the **Agganis Way stop** in October and November 2019 occurred *before* any of the Standing Witnesses became members of CLF. There are only two days – January 27 and January 30, 2020 – on which CLF could theoretically assert that any of its members (specifically, Mary Katherine Andrews and Robert Kendall) have been harmed by idling of Academy's buses at the Agganis Way stop.[2]

(iii) There is no testimony, and thus *no evidence* that any of CLF's members have suffered any actual or concrete harm as a result of the incidents of alleged excessive idling of Academy's buses at the **Newton Go Bus stop**. That is because the occasions on which CLF alleges excessive idling occurred there – in November 2019 and February 2020 – took place *before* Sophia Ly and Sabrina Morelli became members of CLF. And although Tommaso Wagner testified at his deposition that he visited the Newton Go Bus stop in September and October 2019, by November he had moved to Cambridge, Massachusetts, and there is no evidence that he was at or in the vicinity of Newton Go Bus stop after then. (SOF, ¶ 71, n.15)

(iv) There is *absolutely no evidence* of any actual or concrete harm suffered by any member in regard to the claims of Clean Air Act violations at the **Bridgeport lot**. In fact, the only member identified by CLF who is a Connecticut resident is Kathleen Becker. (SOF, ¶19) But Ms. Becker first joined CLF on December 17, 2020, more than two months after the last alleged idling

---

[2] The only other witness who has provided written testimony concerning the Agganis Way stop is Georgia Bolduc; however, she was not a member of CLF at the time of the instances of alleged excessive idling at that location.

5

violation occurred and fourteen months after the first alleged violation. (SOF, ¶23 ) The only other evidence of exposure to purported excessive idling in Bridgeport, Connecticut is the Declaration of Sabrina Morelli, but Ms. Morelli admits that she has not visited Bridgeport since March 2020; and moreover, she cannot support Plaintiff's claims of alleged violations on various dates in November 2019, December 2019 and February 2020 because she was not a member of CLF at the time. (SOF, ¶¶ 65, 61)

In fact, nothing in the summary judgment record establishes that any of Plaintiff's members have suffered a concrete or particularized harm associated with excessive idling of Academy's buses, or, that they have experienced health ailments, or, sought medical treatment for issues caused by vehicle exhaust since they became members, or, that they have curtailed their outdoor activities, or, that they have suffered an aesthetic loss due to excessive idling by Academy buses since becoming members of CLF. (SOF, ¶¶ 32, 37, 41, 45, 54, 60, 66, 73)

## ARGUMENT

### I. STANDARD ON SUMMARY JUDGMENT

The legal standard on a motion for summary judgment is uncontroversial and well-settled: Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of any element essential to that party's case, and on which that party bears the burden of proof at trial. *Lujan v. National Wildlife Federation*, 497 U.S. 871, 884, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990), citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). When responding to a motion for summary judgment, the plaintiff cannot rest on "mere allegations" but must instead set forth specific facts by affidavit or otherwise to meet its burden. *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 2136-37, 119 L.Ed. 2d 351 (1992).

As the party seeking to invoke federal jurisdiction, Plaintiff bears the burden of proof to demonstrate that it has standing to pursue these claims. *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016). Pursuant to the order of this Court, all discovery on the issue of Plaintiff's organizational standing closed on February 5, 2021. Accordingly, CLF may only rely on the evidence that was adduced by that date in order to meet its burden on standing.

## II.     ARTICLE III STANDING

The determination of whether the court has the power to hear the case, and whether the plaintiff is entitled to have the court decide the merits of its claims, is a threshold issue. *Libertad v. Welch*, 53 F.3d 428, 436 (1st Cir. 1995). As articulated by the U.S. Supreme Court, "[o]ur cases have established that the 'irreducible constitutional minimum' of standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, supra*, 136 S.Ct. at 1547 (internal citations omitted). *See also Lujan v. Defs. Of Wildlife*, *supra*, 504 U.S. 555, 560 - 61, 112 S. Ct.at 2136 - 37 (holding that standing consists of three elements: (1) an injury in fact; (2) a causal connection between the injury and the conduct complained of that is "fairly traceable" to the challenged action of the defendant, and not the result of the independent action of third parties; and (3) it is likely as opposed to merely speculative, that the injury will be redressed by a favorable decision); *Me. People's Alliance & Natural Res. Def. Council v. Mallinckrodt, Inc.*, 471 F.3d 277, 283 (1st Cir. 2006) (same).

Based on the declarations of its Standing Witnesses, and the deposition testimony provided by the members Robert Kendall, Sophia Ly and Tommaso Wagner, CLF is unable to present a colorable, fact-based argument that meets the first prong of standing: that its members have suffered an injury-in-fact that is concrete and particularized (and that occurred after they became

7

members). To the contrary, as further described below, no evidence has been presented that any of CLF's witnesses have suffered a concrete harm, or a diminution in their recreational or aesthetic activities. At most, Plaintiff's members express a commendable desire to improve air quality, and allege various unscientific (and unsupported) concerns about the harmful effects of air pollution as well as the potential future impact of vehicle exhaust on their health and well-being. These expressions of concern, which reflect the reality of living in an urban environment, are understandable but they are not actionable.

Similarly, there is no colorable factual basis on which CLF can satisfy the second prong of constitutional standing: a causal connection that "fairly trac[es]" its members' injuries (if any) to the purported instances of excessive idling by Academy's buses, as opposed to the myriad other sources of vehicle exhaust and air pollution that are caused by third parties not before this court. *None* of CLF's members have personally observed idling by Academy's buses on any of the occasions set forth in the Amended Complaint. *None* can say that, since becoming a member, they have suffered any physical harm or symptoms associated with excessive idling of Academy buses (or indeed, of *any* motor vehicles) and none have sought medical treatment for health ailments attributable to excessive idling, let alone excessive idling by Academy's buses. Moreover, *none* of the members assert that their outdoor activities have been diminished or that they have suffered an aesthetic loss due to the alleged excessive idling by Academy's buses.[3]

---

[3] Academy does not in any way concede that CLF could satisfy the third prong of standing under *Spokeo, supra*. Even if CLF were to prevail, the *de minimis* idling of Academy's buses on those few occasions that Plaintiff has adequately alleged harm to its members, cannot be shown to be redressable in this action.

### III.  ORGANIZATIONAL STANDING

In addition to the threshold requirement to establish constitutional (Article III) standing, CLF must also demonstrate that it has standing as an organization to pursue these claims on behalf of its members. To establish associational standing, a membership organization such as CLF must demonstrate that its individual members "would otherwise have standing to sue in their own right." *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 180-81 (2000). CLF must show "at least one identified member had suffered or would suffer harm." *Summers v. Earth Island Institute*, 555 U.S. 488, 498 (2009) (failure by a membership organization to "name the individuals who were harmed" requires dismissal of the group's claims for lack of standing).

The First Circuit has likewise held that the "ground rules for associational standing" require the organization to show that "at least one of its members has standing in his or her own right." *Town of Norwood v. FERC*, 202 F.3d 392, 405 – 06 (1st Cir. 2000). Other circuit courts concur. For example, the Fourth Circuit Court of Appeal has observed that, "to show that its members would have standing, an organization must 'make specific allegations establishing that at least one identified member had suffered or would suffer harm.'" *Southern Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013) (citing and quoting *Summers*, *supra*).

Here, CLF relies entirely on the testimony the eight (8) members it has identified as its "Standing Witnesses" to establish its standing to pursue these claims. But to meet the test for organizational standing, CLF must show that at least one of these members has standing individually to obtain a remedy for the Defendant's alleged conduct. As demonstrated below, the evidence is wholly insufficient to show that any of the members identified by CLF has suffered an

"injury in fact" that is both concrete and particularized, and actual or imminent, not merely conjectural or hypothetical.  *Lujan, supra*, 504 U.S. at 560, 112 S.Ct. at 2136.  Moreover, CLF cannot pursue claims for injuries that may have occurred before the individuals became members of the organization.  *See Env't Texas Citizen Lobby, Inc. v. ExxonMobil Corp.*, 968 F.3d 357, 369–70 (5th Cir. 2020) (requiring specific geographic or other causative nexus between Clean Air Act violations and plaintiff's members).

## IV. PLAINTIFF CANNOT MEET THE CONSTITUTIONAL REQUIREMENTS OF STANDING NECESSARY TO PURSUE THESE CLAIMS AGAINST ACADEMY

### A. None of the CLF Members Have Suffered a Concrete and Particularized "Injury In Fact" Beyond Mere Conjecture and Speculation

Injury in fact is the "first and foremost" of standing's three elements.  *Spokeo, Inc., supra*, 136 S.Ct. at 1547, citing *Steel Co. v. Citizens for Better Environment,* 523 U.S. 83, 103, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998).  "Injury in fact is a constitutional requirement."  *Id*.  The Supreme Court has defined injury in fact as the "invasion of a legally protected interest" that is both: "(a) concrete and particularized… and (b) actual or imminent, not conjectural or hypothetical."  *Lujan, supra*, 504 U.S. at 560, 112 S.Ct. at 2136.

None of the members on whose behalf CLF purportedly brings these claims has suffered such an injury.  To the contrary, each of CLF's members assert generalized concern about air pollution and they articulate a desire that the air quality in and around their homes be improved.  They also express "worry" about the long-term effects of air pollution on their future health and well-being.  But none identify any health issues attributable to vehicle exhaust (let alone to the isolated instances of excessive idling alleged in the Amended Complaint).  Based on a review of the written and deposition testimony, it is impossible to discern any actual harm to the members'

health, or any detriment to their economic interests, or even to their recreational or aesthetic activities.

A full summary of the evidence of the members injury-in-fact is included in Academy's Statement of Undisputed Facts that accompanies this Motion. The declaration of Mary Katherine Andrews is illustrative. Ms. Andrews has submitted a declaration in which she states that, prior to the Covid-19 pandemic, she would regularly bike from her apartment in Allston to Boston University where she attends law school. (SOF, ¶29; Exh. 3) She further states:

"14. The air quality near my apartment in Allston is not the best. There is a lot of traffic in the neighborhood, many buildings close together, and not many trees.

"15. Exhaust from idling vehicles, including Academy buses, makes the air quality in Allston a lot worse. Idling is a problem in the neighborhood around my apartment, and it's a huge pet peeve of mine. It bothers me that Academy violates idling laws. I just don't think it's necessary to idle for longer than five minutes. The aggregate effects of Academy's many idling vehicles on air quality and health concerns me as well.

"16. I understand that vehicle exhaust is harmful to human health, especially to the lungs. I understand that exhaust can also cause or exacerbate asthma.

"17. I am worried about the long term and immediate health effects of breathing exhaust from vehicles, including from Academy's idling buses. Whenever its smoggy outside or I see large semitrucks or buses, I think about how the exhaust could be harming my health.

"18. Poor air quality from exhaust does affect my quality of life. I hate exercising in exhaust fumes; when I exercise, it feels like I breathe in more fumes. I avoid biking on Commonwealth Avenue when I can because there is so much traffic and exhaust there.

"19. When large trucks or buses pass me while I'm biking, I hold my breath and wait ten seconds so I don't have to breathe exhaust into my lungs and to minimize inhaling the bad smelling exhaust. I feel protective about my lungs and want to protect them as much as I can from the particulate matter in exhaust.

"20. I'd be much happier if there were less exhaust pollution near my apartment in Allston. I love experiencing cleaner air away from my neighborhood; I like to spend time on the Charles River path, and can avoid exhaust on that path.

(SOF, ¶¶32-33; Exh. 3)

As a matter of law, the evidence of harm to CLF's members does not constitute an "injury in fact." None of its members have suffered an "invasion of a legally protected interest" that is both concrete and particularized and actual or imminent, as opposed to being merely conjectural or hypothetical. *Lujan, supra*, 504 U.S. at 560, 112 S.Ct. at 2136.

### B. CLF Has Failed to Meet Its Burden to Show that the Alleged Injury to Its Members Is Fairly Traceable to the Defendant's Challenged Conduct

In addition to its inability to establish an injury in fact, CLF cannot demonstrate that the harm (if any) suffered by the eight members it has identified is "fairly traceable" to the alleged excessive idling of Academy's buses. "The standing requirement ensures that parties will not convert the judicial process into no more than a vehicle for the vindication of the value interests of concerned bystanders. In order to demonstrate that they are more than 'concerned bystanders,' plaintiffs need only show that there is a "substantial likelihood" that defendant's conduct caused plaintiffs' harm." *Pub. Interest Research Grp. of New Jersey, Inc. v. Powell Duffryn Terminals Inc.*, 913 F.2d 64, 72 (3rd Cir. 1990). To establish traceability, "Plaintiffs must make two showings. First, that each violation in support of their claims 'causes or contributes to the kinds of injuries' they allege. . . Second, Plaintiffs must demonstrate the existence of a 'specific geographic or other causative nexus' such that the violation could have affected their members." *Env't Texas Citizen Lobby, Inc. v. ExxonMobil Corp.*, 968 F.3d 357, 369–70 (5th Cir. 2020) (internal citations omitted).

Indeed, "[t]he line of causation between the defendant's action and the plaintiff's harm must be more than attenuated." *Washington Envtl. Council v. Bellon*, 732 F.3d 1131, 1141 (9th Cir. 2013). Where, as here, "the causal chain involves numerous third parties whose independent decisions collectively have a significant effect on plaintiffs' injuries, ... the causal chain is too weak to support standing." *Id*. at 1142.

The generalized concerns raised by CLF's members can hardly be linked to the alleged instances of excessive idling by Academy's buses on the isolated occasions identified in the Amended Complaint, particularly when compared to the substantial vehicle emissions that occur daily from other sources. Plaintiff's members all live in urban areas within and around Boston[4] where highway and city travel inevitably includes a constant flow of motor vehicle traffic generated by thousands of diesel and gasoline powered vehicles. The fact that the members "understand" an Academy bus may have idled for more than five minutes at a bus terminal, typically miles from their home residence or other places they frequent, is simply too attenuated to meet the legal standard that the member's injury be "fairly traceable" to the Defendant's conduct. *See U.S. E.P.A. ex rel. McKeown v. Port Auth. of New York & New Jersey*, 162 F. Supp. 2d 173, 184 (S.D.N.Y.) ("Even if the operation of toll booths increases toxic tailpipe emissions, the emissions are caused by the vehicles owned by millions of people not parties to this action. If all toll booths were removed from the mid-Atlantic states, as plaintiffs seek, millions of drivers would still experience backups, traffic jams and delays that increase tailpipe emissions. Accordingly, plaintiffs have not established that the injury complained of is "fairly ... traceable to the challenged action of defendant[s], and not ... the result [of] the independent action of some third party not before the court.")

## V. BECAUSE PLAINTIFF HAS NOT COMPLIED WITH THE "CITIZEN SUIT" PROVISION OF THE ACT IT IS BARRED FROM ASSERTING CLAIMS ON BEHALF OF ITS MEMBERS

As noted above, none of the Standing Witnesses were members of CLF at the time Plaintiff served the Massachusetts Notice letter on November 8, 2019. Likewise, the only member who resides in Connecticut, Kathleen Becker, did not become a member until several months after

---

[4] The one exception is Kathleen Becker, the lone Connecticut resident, who has provided testimony regarding alleged idling at the Bridgeport lot.

13

Plaintiff served the Connecticut Notice letter on July 6, 2020. Therefore, Plaintiff has not complied with Section 7604(b) of the Act and it is therefore barred from bringing these claims on behalf of its members. Pursuant to the Act, a "citizen suit" may not be commenced "prior to 60 days after the plaintiff has given notice of the violation (i) to the Administrator, (ii) to the State in which the violation occurs, and (iii) to any alleged violator." 42 U.S.C. §7604 (b)(1)(a).

It is abundantly clear that this lawsuit was not filed to remedy any harm ***actually suffered*** by CLF's members. Indeed, only two of the Standing Witnesses were members of CLF at the time this lawsuit was filed. Both of them, including one employee (Tommaso Wagner) and one relative of CLF's counsel of record (Robert Kendall) were actively recruited, after-the-fact, to become nominee plaintiffs so as to provide bogus grounds for CLF's assertion of standing. Whether or not CLF could demonstrate, through others, that Academy's buses idled in excess of the Massachusetts or Connecticut SIPs, such evidence does not permit CLF to maintain a cause of action on behalf of persons who were not even members when it initially asserted these claims against the Defendant.

It is axiomatic that CLF's claims must fail because "[t]he relevant showing for purposes of Article III standing… is not injury to the environment but ***injury to the plaintiff***." *Friends of the Earth, Inc., supra,* 528 U.S. 167, 181, 120 S. Ct. 693, 704, 145 L. Ed. 2d 610 (2000) (emphasis added). Even if protection of the environment is germane to CLF's purpose, Plaintiff is not permitted to "convert the judicial process into 'no more than a vehicle for the vindication of the value interests of concerned bystanders.'" *Pub. Interest Research Grp. of New Jersey, Inc. v. Powell Duffryn Terminals Inc.*, 913 F.2d 64, 72 (3d Cir. 1990).

Moreover, the written and verbal testimony of the Standing Witnesses confirms that none of them were even aware of the alleged violations at the time the excessive idling allegedly

occurred: none personally observed idling of Academy's buses and none have articulated any concrete harm that is "fairly traceable" to excessive idling, even with the benefit of hindsight prompted by CLF's lawyers. Plaintiff cannot be permitted to retroactively recruit members to satisfy the requirements of constitutional and organizational standing *ex post facto*. Plaintiff's attempt to manufacture claims that were not actionable at the time they allegedly occurred (because the individual members have suffered no concrete harm and were wholly unaware of the purported violations) would make a mockery of the notice provisions of the Act. Therefore, CLF is statutorily barred from pursuing these claims on behalf of its members.

## VI. CLF HAS NOT IDENTIFIED ANY MEMBER TO SUPPORT ITS CLAIMS OF EXCESSIVE IDLING AT THE BRAINTREE LOT, THE NEWTON GO BUS STOP, THE BRIDGEPORT LOT AND THE AGGANIS WAY STOP; THEREFORE, IT HAS NO STANDING TO PURSUE THOSE CLAIMS

For each of the reasons discussed above, Plaintiff has failed to establish that it has either constitutional or organizational standing to pursue this "citizen suit" for alleged violations of the Clean Air Act. Additionally, as discussed immediately above, CLF has not complied with the 60-day pre-suit notice requirement under Section 7604(b) of the Act, and for that additional reason, it is barred from pursuing these claims.

But even if Plaintiff's complaint somehow survives these constitutional, statutory and common law challenges, the Court should nevertheless enter partial summary judgment, and dismiss all claims asserted in the Amended Complaint that relate to the alleged violations at the Braintree lot, the Newton Go Bus stop and the Bridgeport lot, and those purported violations at the Agganis Way stop during October and November 2019 because CLF cannot show that any of its members has suffered harm from the alleged occurrences at these locations.

Specifically, although the Amended Complaint alleges various instances of excessive idling at the **Braintree lot**, at the close of discovery on standing, CLF has failed to present any

15

evidence – either by written declaration or by testimony at deposition – that any of its members has ever been at that location or even in proximity to it at any point in time. Since no member has testified, or even alluded to, an injury in fact at this location, or that they have been harmed in a manner that is "fairly traceable" to these alleged violations, CLF cannot meet its burden to establish constitutional or organizational standing to pursue claims related to the Braintree lot.

The same result is mandated in regard to the alleged violations at the **Newton Go Bus stop**. CLF has produced *no evidence* that any of its members have suffered any actual or concrete harm as a result of the incidents of alleged excessive idling of Academy's buses at that location. The occasions on which CLF alleges excessive idling at that location – in November 2019 and February 2020 – took place *before* CLF members Sophia Ly and Sabrina Morelli joined the organization. The deposition testimony provided by member Tommaso Wagner does not change this result. Mr. Wagner testified that although he occasionally visited the Newton Go Bus stop in September and October 2019, by November he had moved to Cambridge, Massachusetts, and there is no evidence that he was at or in the vicinity of Newton Go Bus stop after that point in time.

CLF's failure to establish any actual harm that is "fairly traceable" to the Defendant's conduct is particularly egregious in regard to the alleged violations at the **Bridgeport lot** that were asserted for the first time in the Amended Complaint. Before amending its complaint to assert these claims, CLF clearly knew (or should have known) that it could not identify a single member to support these claims. The only witness CLF has identified to testify in regard to the Bridgeport lot is Kathleen Becker. However, Ms. Becker did not join the organization until a mere two months ago, on December 17, 2020. Amazingly, this was eighteen (18) months after CLF served the Connecticut Notice Letter, fourteen (14) months after the first alleged violation, three months after

the last alleged violation there and two months after CLF filed its Amended Complaint asserting Clean Air Act violations at that location.

Finally, in regard to the purported violations at the **Agganis Way stop**, CLF has again failed to present any evidence – either by written declaration or by testimony at deposition – that any of its members was at that location or in proximity to it at the time of the alleged instances of excessive idling in October and November 2019.  Only two members, Mary Andrews and Robert Kendall, have provided (albeit marginal) testimony regarding the remaining two occasions of alleged excessive idling there in January 2020.

## **CONCLUSION**

For the reasons set forth above, Defendant respectfully requests that this Motion be allowed, and that the Court dismiss the Amended Complaint in its entirety.  In the alternative, the Court should enter partial summary judgment dismissing all claims related to the Braintree lot, the Newton Go Bus stop and the Bridgeport lot; and all claims related to the Agganis Way stop, other than the violations that allegedly occurred on January 27 and 30, 2020.

Respectfully submitted,

ACADEMY EXPRESS, LLC,
By its attorneys:

*/s/ Jon C. Cowen*
Jon C. Cowen (BBO # 552961)
jcowen@donovanhatem.com
Adam C. Benevides (BBO # 673172)
abenevides@donovanhatem.com
DONOVAN HATEM LLP
53 State Street, 8th Floor
Boston, MA 02109
Telephone: (617) 406-4511
Facsimile: (617) 406-4501

**CERTIFICATE OF SERVICE**

    I, Jon C. Cowen, hereby certify that on February 19, 2021, the foregoing Memorandum of Law in Support of Defendant Academy Express, LLC's Motion for Summary Judgment on the Issue of Standing was filed through the Court's electronic filing system ("ECF"), by which means a copy of the filing will be sent electronically to all parties registered with the ECF system.

                                      */s/ Jon C. Cowen*
                                      Jon C. Cowen

4842-6703-3309, v. 1