UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CONSERVATION LAW FOUNDATION, INC.,<br><br>Plaintiff,<br><br>v.<br><br>ACADEMY EXPRESS, LLC.,<br><br>Defendant. | Case No. 1:20-cv-10032-WGY |
| CONSERVATION LAW FOUNDATION, INC.,<br><br>Plaintiff,<br><br>v.<br><br>ACADEMY EXPRESS, LLC, DPV TRANSPORTATION, INC., and BOSTON CHARTER BUS, LLC,<br><br>Defendant. | Case No. 1:20-cv-10033-WGY |

**JOINT PRETRIAL MEMORANDUM**

Pursuant to Local Rule 16.5(d) and the Court's Procedural Order Re: Final Pretrial Conference/Trial (ECF No. 182), Plaintiff Conservation Law Foundation, Inc. ("CLF") and Defendant Academy Express, LLC ("Academy") (collectively "the Parties") respectfully submit this Joint Pre-Trial Memorandum.

**1)   Summary Of The Evidence That Will Be Offered By The Parties**

   **A.   CLF's Position**

CLF filed this lawsuit against Defendant Academy under the citizen suit provision of the

1

Clean Air Act ("CAA"), 42 U.S.C. § 7604. CLF is a member-supported non-profit dedicated to protecting New England's environment. Academy operates a fleet of charter and commuter buses all over the East Coast, including in Massachusetts. CLF will establish at trial that Academy has repeatedly violated, and continues to violate, the motor vehicle idling limits under the federally enforceable Massachusetts State Implementation Plan ("SIP") by idling its vehicles far in excess of the five minutes permitted under the Massachusetts Anti-Idling Regulation, 310 C.M.R. § 7.11(1)(b). CLF will also establish that none of the numerous instances of idling by Academy qualifies for any exception under 310 C.M.R. § 7.11(1)(b). CLF will also establish that unlawfully idling vehicles operated by Academy emit toxic air pollutants, including fine particulate matter, nitrogen oxides, sulfur dioxide, benzene, and formaldehyde. Academy's unlawful idling has significantly harmed, and continues to harm, the health and lives of CLF's members, and CLF thus seeks declaratory relief, injunctive relief, penalties, and attorneys' fees and costs.

### B. Academy's Position

Academy denies all of the claims asserted against it in this matter. It is Academy's position that CLF's members have not demonstrated standing with respect to the claims asserted in this lawsuit. Academy denies CLF's allegations that Academy unlawfully idles its buses and it denies that it has violated 310 C.M.R. § 7.11(1)(b). It is Academy's position that it has policies, procedures, and mechanisms in place to comply with 310 C.M.R. § 7.11(1)(b) and to prevent unlawful idling of its buses. It is Academy's position that Academy's buses and the manner in which Academy operates/has operated its fleet of buses has not caused any harm whatsoever to the health and well-being of CLF's members. It is Academy's position and it expects to show at trial that the alleged instances of unlawful idling were not in fact unlawful idling but instead comprised of necessary operations of its bus engines that generally involved: a) the boarding or

deboarding of passengers during the late fall and winter seasons; b) necessary bus maintenance; and c) associated power needs. Moreover, it is Academy's position that Academy's buses do not emit the toxic air pollutants that CLF claims; that any such emissions do not contribute to any meaningful level of air pollution in the locations where they operate; and that any such emissions have no discernible impact on members of the public including CLF members.

**2)    Stipulations Of Fact**

The Parties' Stipulations of Fact are attached as Appendix A.

**3)    Contested Issues Of Fact**

The Parties contest all facts not included in the stipulations of fact. The Parties provide a summary of their respective positions regarding the contested issues of fact below.

    **A.  CLF's Position**

      i.    Academy is the largest privately owned and operated transportation company in the United States.

      ii.   Academy owns, operates, and manages a fleet of charter and commuter buses all over the East Coast, including in Massachusetts.

      iii.  Academy's bus fleet includes non-electric, diesel-fueled vehicles.

      iv.   Academy's operation of non-electric and diesel-fueled vehicles emits exhaust, fine particulates, nitrogen oxides (NOx), sulfur dioxide (SO2), benzene, formaldehyde, and forty other kinds of toxic air contaminants into the atmosphere

      v.    Academy has repeatedly violated Massachusetts Anti-Idling Regulation 310 C.M.R. § 7.11(1)(b) by unlawfully idling buses that it owns, operates, manages and/or oversees in excess of five minutes.

      vi.   Academy produced GPS idling reports showing when Academy's buses are

idling and for how long. Academy's idling reports show that Academy repeatedly idled in excess of five minutes between September 27, 2019 and January 31, 2020 at the Newton Go Bus stop, the Cambridge Go Bus stop, and the Wellington shuttle stop.

vii. CLF's investigator also repeatedly observed Academy's vehicles unlawfully idling in excess of five minutes at the Newton Go Bus stop, the Harry Agganis Way shuttle stop, the Cambridge Go Bus stop, and the Wellington shuttle stop between September 27, 2019 and February 2, 2020.

viii. Academy's idling reports and CLF's investigator's documented findings show that Academy unlawfully idled in excess of five minutes over 80 times between September 27, 2019 and January 31, 2020. In over 20 instances, Academy's vehicles were unlawfully idling for periods of 20 minutes or more between September 27, 2019 and January 31, 2020.

ix. The instances of idling documented in Academy's idling reports and by CLF's investigator did not occur within any exception listed in the Massachusetts Anti-Idling Regulation, 310 C.M.R. § 7.11(1)(b).

x. Academy engaged in a routine pattern or practice of unlawful idling throughout the statute of limitations period from 2015 through present, and additional idling reports from Academy will reveal further instances of unlawful idling.

xi. Academy is the largest privately owned and operated transportation company in the US, and has the financial capability to pay maximum penalties for its violations.

xii. Academy's compliance history is poor, given the evidence that Academy committed dozens of violations over multiple months.

4

xiii. Academy could have complied with the Massachusetts Anti-Idling Regulation, 310 C.M.R. § 7.11(1)(b) but simply did not take adequate measures to enforce the regulation or its own anti-idling policies.

xiv. Academy's violations can adversely affect public health and create nuisance-type impacts that interfere with daily life, including concerns about inhaling carcinogens and other pollutants emitted by Academy's vehicles.

xv. CLF is a nonprofit, member-supported, regional organization dedicated to protecting New England's environment.

xvi. CLF's members include individuals who regularly use or pass directly by the Newton Go Bus, Harry Agganis Way, Cambridge Go Bus, and Wellington Stops where Academy's vehicles unlawfully idle.

xvii. CLF's members include individuals who live and recreate in close geographic proximity to the Newton Go Bus, Harry Agganis Way, Cambridge Go Bus, and Wellington Stops where Academy's vehicles unlawfully idle.

xviii. CLF's members have been harmed and will continue to be harmed by Academy's idling and the pollutants released from Academy's vehicles in the following ways: exacerbation of health conditions; changes in behavior and recreation; fear of health effects; and a negative impact on well-being, quality of life, and enjoyment.

**B. Academy's Position**

a. Academy denies having violated Massachusetts Anti-Idling Regulation 310 C.M.R. § 7.11(1)(b) by unlawfully idling buses that it owns, operates, manages and/or oversees in excess of five minutes.

b. CLF's members have not demonstrated standing with respect to the claims asserted in

      this matter.

c. Academy operates a fleet of buses which travel along routes that are interstate and intrastate.

d. Academy's operation of its fleet of buses generally provides an environmental advantage, as the availability of mass transport via buses limits the number of vehicles operating on the roadways and reduces the potential for air pollution due to vehicle exhaust.

e. Academy intends to show that the instances of alleged unlawful idling asserted by Plaintiff did not occur.

f. Academy intends to show that certain of the alleged violations involved timeframes during which active onboarding and/or disembarking of passengers were taking place, with certain instances occurring during winter months.

g. The weather conditions present on the alleged violation dates required buses to operate their engines during the onboarding and/or disembarking process to maintain conditions and temperatures in the buses, necessary for the health and safety of passengers.

h. Certain of the alleged violations involved the onboarding and/or disembarking of passengers requiring additional assistance, including wheelchair access to Academy buses via ramps available on the buses.

i. The operation of Academy bus engines is necessary to operate lifts and ramps to accommodate passengers in wheelchairs onto Academy's buses.

j. Certain of the alleged violations involved Academy's bus drivers' operational inspections of the buses, which are necessary to ensure the safe day-to-day operation

  of Academy's buses, and which requires the engines to operate during those inspections.

k. Many of Academy's buses contain exhaust after treatment systems.

l. Academy's operation of diesel-fueled vehicles does not emit toxic air pollutants, as alleged by CLF, any such emissions do not contribute to any meaningful level of air pollution in the locations where they operate, and have no discernible impact on members of the public, including CLF members.

m. CLF's investigator videos and notes do not demonstrate instances of Academy's buses unlawfully idling.

**4)** **Jurisdictional Issues**

CLF asserts jurisdiction pursuant to Section 304(a) of the Clean Air Act, 42 U.S.C. § 7604(a), and 28 U.S.C. § 1331. Academy contests the standing of CLF to seek citizen suit recovery with respect to its claims.

**5)** **Questions Raised By Pending Motions**

CLF has filed the following motions which are pending with the Court:

 i. CLF's Motion for Clarification of the Court's Minute Order (ECF No. 185) on CLF's Renewed Motion to Compel (ECF No. 189)

 ii. CLF's Motion *in Limine* to Preclude Defendant From Presenting Expert Testimony Regarding Traceability (ECF Nos. 165, 166)

 iii. CLF's Motion for Leave to File Reply in Support of Motion *in Limine* to Preclude Defendant From Presenting Expert Testimony Regarding Traceability (ECF No. 174)

Academy has filed the following motions which are pending with the Court:

      i. Academy's Motion to Exclude Testimony of Plaintiff's Expert Witnesses (Dkt. 89)

    ii. Academy's Motion to Exclude Testimony of Plaintiff's Expert Witnesses (Dkt. 82)

**6) Issues Of Law**

The Parties provide a summary of the issues of law to be tried below. The below list is not intended to provide a recitation of each individual element of or subsidiary issue related to each claim.

      i. Whether Academy violated Massachusetts Anti-Idling Regulation 310 C.M.R. § 7.11(1)(b).

    ii. Whether CLF has standing to pursue its CAA claims.

   iii. What relief, if any, should be awarded under the CAA Citizen Suit Provision, including:

        a. Whether CLF is entitled to an order permanently enjoining Academy from causing, suffering, allowing, or permitting the idling of any motor vehicles in violation of 310 C.M.R. § 7.11(1)(b).

        b. Whether CLF is entitled to an order requiring Academy to comply with Massachusetts Anti-Idling Regulation 310 C.M.R. § 7.11(1)(b).

        c. Whether CLF is entitled to an order requiring Academy to take appropriate actions to remedy harm caused by its noncompliance with the CAA.

        d. Whether Academy is required to pay civil penalties for its violation of the CAA, and if so, the amount as determined by the "penalty assessment criteria" set forth in 42 U.S.C. §7413(e).

        e. Whether CLF is entitled to an award of its costs including its reasonable attorneys' fees, as permitted by 42 U.S.C. § 7404(d), and if so, the amount.

**7)       Requested Amendments To The Pleadings**

The Parties are not currently seeking to amend any pleadings.

**8)       Additional Matters To Aid In Disposition Of The Actions**

Academy has waived its jury demand. Accordingly, the case will proceed as a jury-waived trial.

**Academy's Statement**

Academy requests that the Court phase and bifurcate the trial into a liability phase and a penalty phase pursuant to Rule 42(b) for judicial economy, convenience, and avoidance of prejudice. Academy requests that the trial proceed first as to standing and then only if standing is established, to liability, followed by the penalty phase as/if necessary and as further articulated below.

As a preliminary matter, the issue of CLF member standing must be addressed. Standing is a threshold jurisdictional issue that must be resolved by the Court before the case can proceed on the merits and before the Court addresses penalties. "Standing is a threshold issue, determining whether the court has the power to hear the case, and whether the putative plaintiff is entitled to have the court decide the merits of the case." *Physician's Healthsource, Inc. v. Vertex Pharm. Inc.*, 247 F. Supp. 3d 138, 146 (D. Mass. 2017). The Supreme Court has emphasized that standing is "not a mere pleading requirement[ ] but rather an indispensable part of the plaintiff's case," which must be supported "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Thus, where standing remains controverted at trial, the specific facts "must be 'supported adequately by the evidence adduced at trial.'" *Nantucket Residents Against Turbines v. U.S. Bureau of Ocean Energy Mgmt.*, 675 F. Supp. 3d 28, 39 (D. Mass. 2023). And as the Fifth Circuit recently confirmed, "In cases that proceed to

9

trial, standing must be established by a preponderance of the evidence." *Env't Texas Citizen Lobby, Inc. v. ExxonMobil Corp.*, 123 F.4th 309, 318 (5th Cir. 2024), cert. denied, 145 S. Ct. 2845 (2025).

Only in the event that CLF meets its burden of establishing standing, bifurcation of the trial into liability and penalty phases is the appropriate and efficient course. Should the case proceed to a trial on the merits, the liability phase will address the issue as to whether Academy violated the Massachusetts SIP idling provisions.

Penalties, by contrast, are entrusted exclusively to the Court's discretion under 42 U.S.C. § 7413(e), which requires consideration of statutory factors such as compliance history, economic impact, and good faith efforts to comply. Evidence of "the violator's full compliance history and good faith efforts to comply, the duration of the violation, … the economic benefit of noncompliance, and the seriousness of the violation" is expressly enumerated as penalty factors under § 7413(e), not as elements of liability. As the Supreme Court explained in *Tull v. U.S.*, 481 U.S. 412, 421 (1987), civil penalties under analogous environmental statutes are not for a factfinder but are for the court to determine. Following *Tull*, courts have routinely separated liability from penalty determinations in environmental enforcement actions to encourage streamlined trials and judicial economy. *See United States v. Acquest Transit LLC*, 2021 WL 809984 (W.D.N.Y. 2021) (liability tried first, penalty determined separately by the court); *Russian River Watershed Prot. Comm. v. City of Santa Rosa*, 142 F.3d 1136, 1140 (9th Cir. 1998) (affirming bifurcated liability and penalty proceedings in Clean Water Act citizen suit).

Bifurcation is appropriate where, as in the present matter, it results in avoiding prejudice, expediting resolution, and economizing resources. *Industrias Metalicas Marva, Inc. v. Lausell*, 172 F.R.D. 1, 2 (D.P.R. 1997).

**CLF's Response:**

Academy's proposal to bifurcate trial into three separate phases would not expedite or economize the proceedings; to the contrary, bifurcation would cause inefficiencies for the Court and Parties and further delay resolution of CLF's claims. Therefore, CLF's position is that all issues should be tried in a single trial.

Academy contends that standing should be bifurcated because it is a threshold jurisdictional issue. But that is not a basis for bifurcation: courts routinely try the issue of standing in the same proceeding as liability in environmental cases, including in the *Env't Texas Citizen Lobby, Inc. v. ExxonMobil Corp.* case cited by Academy. *Environment Texas Citizen Lobby, Inc., et al., v. ExxonMobil Corporation, et al.*, Case No. H-10-CV-4969, Dkt. 156 (Dec. 6, 2013) (setting bench trial on all issues). None of the cases cited by Academy support bifurcation of standing during trial. *Physician's Healthsource, Inc. v. Vertex Pharm. Inc.*, 247 F. Supp. 3d 138, 146 (D. Mass. 2017) (addressing standing at summary judgment phase); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (same); *Nantucket Residents Against Turbines v. U.S. Bureau of Ocean Energy Mgmt.*, 675 F. Supp. 3d 28, 39 (D. Mass. 2023) (same).

There is also no basis to bifurcate liability from the Court's determination of a penalty in this case. There is significant evidentiary overlap between the penalty factors that the Court must consider in assessing a civil penalty and liability. For example, under 42 U.S.C. § 7413(e), the Court must consider evidence related to Academy's compliance history and good faith efforts to comply, the duration of Academy's violations, and the seriousness of Academy's violations, among others. 42 U.S.C. § 7413(e). The evidence related to each of these factors also goes to Academy's liability. Bifurcation would also inconvenience the Parties and witnesses, as the testimony of

11

multiple Academy witnesses and CLF's investigator goes to both liability and the penalty factors such that they would need to be called in both phases of trial.

The cases cited by Academy do not support bifurcation of the Court's penalty determination in this case. In *United States v. Acquest Transit LLC*, the court granted a request to bifurcate where the liability phase was to be tried by a jury. No. 09-CV-55S, 2021 WL 809984, at *17 (W.D.N.Y. Mar. 3, 2021) (holding bifurcation was appropriate because the parties requested a jury trial on liability while civil penalties are to be determined by the Court, and thus there were "two different fact finders for liability and penalty"). In contrast, here, Academy waived its jury demand, and thus all issues will be decided by the Court. The *Russian River Watershed* case is also distinguishable. There, the district court held separate bench trials, but the first was to "determin[e] the proper method for measuring compliance with the NPDES permit," while the second was to determine the defendant's "alleged violations in light of [the] earlier ruling." *Russian River Watershed Prot. Comm. v. City of Santa Rosa*, 142 F.3d 1136, 1140 (9th Cir. 1998). Here, Academy proposes a separate phase of trial only to assess the appropriate penalty, and as discussed above, there is significant overlap between the evidence supporting liability and a civil penalty in this case. Thus, there is no basis to bifurcate proceedings.

9) **Probable Length Of Trial**

CLF estimates that trial will take 5 days in the event that its Motion *in Limine* to Preclude Academy from Presenting Expert Testimony on Liability (ECF No. 166) is granted, and 7 days in the event the motion is denied.

Academy estimates that trial will take 7-10 days (with trial proceeding on a one-half day schedule). Academy further estimates that if the trial is phased and bifurcated, the trial will take

5 days for standing and liability phases and 5 days for a penalty phase (if necessary).

**10)**    **Witness Lists**

The Parties' witness lists are attached as Appendices B-1 and B-2.

**11)**    **Proposed Exhibit Lists**

The Parties' joint exhibit list is attached as Appendix C-1. The exhibits to which the Parties reserve their rights to object are attached as Appendices C-2 and C-3. The Parties will continue to confer on their proposed exhibits in an effort to resolve their objections.

**12)**    **Remaining Objections To Evidence Identified In Pre-Trial Disclosures Required By Fed. R. Civ. P. 26(a)(3)**

Pursuant to the Court's Pretrial Order (Dkt. 182), the Parties will file their objections to exhibits separately prior to the Pretrial Conference.

CLF's objections to Academy's witness list are attached as Appendix-D. Academy intends to file its objections to witnesses separately prior to the Pretrial Conference.

Pursuant to Rule 26(a)(3), CLF disclosed deposition designations for Sophia Ly, which CLF intends to present at trial as Ms. Ly is unavailable. The Parties have agreed to further confer on any objections and counter-designations Academy has to CLF's designations.

Dated: September 19, 2025      Respectfully submitted,

| | |
|---|---|
| CONSERVATION LAW FOUNDATION, INC., | ACADEMY EXPRESS, LLC, |
| By its attorneys: | By its attorneys: |
| */s/ Heather A. Govern* | */s/ Jon C. Cowen* |
| Heather A. Govern (BBO No. 688482)<br>Sarah M. Craig (admitted *Pro Hac Vice*)<br>Margaret M. A. Nivison (BBO # 699047)<br>P. Sabin Willett (BBO #542519)<br>62 Summer Street<br>Boston, MA 02110<br>(617) 850-1763<br>hgovern@clf.org<br>scraig@clf.org<br>mnivison@clf.org<br>swillett@clf.org | Jon C. Cowen (BBO No.: 552961)<br>Jennifer A. Whelan (BBO No: 631519)<br>Alexander C. Teschemacher (BBO No.: 695597)<br>MG+M THE LAW FIRM<br>125 High Street, Oliver Street Tower<br>6th Floor<br>Boston, MA 02110<br>Telephone: (617) 406-4511<br>Facsimile: (617) 406-4501<br>jcowen@mgmlaw.com<br>jwhelan@mgmlaw.com<br>ateschemacher@mgmlaw.com |
| *Counsel for Plaintiff* | *Counsel for Defendant* |

## CERTIFICATE OF SERVICE

      I certify that on September 19, 2025, the foregoing document was filed through the ECF system, by which means a copy of the filing will be sent electronically to all parties registered with the ECF system.

                                              */s/ Heather A. Govern*
                                                 Heather A. Govern